In the

# United States Court of Appeals

## For the Seventh Circuit

No. 02-2218

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BRUCE RHODES,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 01-CR-30012—**Richard Mills**, *Judge.*

ARGUED JANUARY 16, 2003—DECIDED JUNE 2, 2003

Before FLAUM, *Chief Judge,* COFFEY, and RIPPLE, *Circuit Judges.*

COFFEY, *Circuit Judge.* Pursuant to a plea agreement, Defendant-Appellant Bruce Rhodes ("Rhodes") pleaded guilty to mail fraud. Although he waived his rights to appeal his conviction in the plea agreement, Rhodes reserved the right to appeal the amount of restitution ordered by the district court if the amount ordered exceeded $9,198.00. The district court ordered that Rhodes make restitution in the amount of $1,104,557.39, due and payable "immediately" to Rhodes' former employer, Magna Investments, Inc. ("Magna"). Rhodes appeals the restitution order, and we affirm.

## I.  FACTUAL BACKGROUND

According to the plea agreement, between October 1997 and July 1999, Rhodes worked as an investment representative for Magna, an investment brokerage firm, at one of its branches in Springfield, Illinois. While at Magna, Rhodes created a two-fold scheme to defraud Magna's customers and enrich himself. First, without the knowledge or consent of six (6) investors, Rhodes placed money from their accounts into his own accounts. Second, Rhodes also diverted the money of approximately 240 investors, without their knowledge or consent, from the investments that they had chosen (low-risk, short-term) to investments that paid a higher commission (high-risk, long-term). To effectuate this second scam, Rhodes made false statements, prepared false documents, and made use of the U.S. mails.

After an investigation by federal authorities, a federal grand jury was convened on January 4, 2001, and returned a six-count indictment against Rhodes for his criminal conduct. Counts I through IV charged him with mail fraud in violation of 18 U.S.C. § 1343; Counts V and VI charged him with wire fraud in violation of 18 U.S.C. § 1343. On July 2, 2001, Rhodes entered into a plea agreement in which he pleaded guilty to one count of mail fraud. At his sentencing hearing on April 29, 2002, pursuant to the plea agreement with the approval of the court, the Government moved to dismiss the remaining Counts against Rhodes and the court agreed.

The district court sentenced Rhodes to 37 months in prison, a three-year term of supervised release, and ordered that he pay a $100 special assessment. In addition, the judge ordered Rhodes to make restitution in the amount of $1,104,557.39, due and payable "immediately" to Magna, relying on the fact that Magna had reimbursed the direct victims of Rhodes' fraud.

Rhodes filed this appeal timely, May 8, 2002, and this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1) and (2).

## II.  DISCUSSION

### A.  Argument Waiver

This Court has repeatedly held that "a voluntary and knowing waiver of an appeal is valid and must be enforced." *See, e.g.*, *United States v. Sines*, 303 F.3d 793, 798 (7th Cir. 2002); *United States v. Hare*, 269 F.3d 859, 860 (7th Cir. 2001); *Jones v. United States*, 167 F.3d 1142, 1144 (7th Cir. 1999). A waiver is defined as "the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993)(quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). An effective waiver "extinguishes the error and precludes appellate review." *United States v. Staples*, 202 F.3d 992, 995 (7th Cir. 2000). We note, however, that "a waiver of the right to appeal does not completely foreclose review." *Jones,* 167 F.3d at 1144. A defendant does not lose the right to pursue a claim that the waiver was involuntarily made, was based on a constitutionally impermissible factor (such as race), or was made without the effective assistance of counsel. *Id.* at 1144-45.

Here, however, Rhodes does not claim that the waiver was involuntarily made, was based on an impermissible factor, or was made without the effective assistance of counsel. Rather, Rhodes objects to the fact that the restitution order imposed on him directs him to pay his former employer, Magna. He also maintains that the district court erred by not establishing a payment schedule for the restitution.

We will not vitiate the plea agreement by entertaining either of these two arguments. Paragraph 12 of the plea

agreement expressly states that "the Defendant knowingly and voluntarily waives the right to appeal his conviction, any invalidity in the plea agreement and any sentence within the maximum provided in the statute of conviction." The only exceptions to this waiver are narrow: "[T]he Defendant reserves the right to appeal from (a) any finding that the amount of loss attributable to the Defendant under §2F1.1 or owed as restitution is more than $9,198.00; (b) any determination that the Defendant's sentencing range for imprisonment is higher than 33 to 41 months; and (c) any upward departure."

Rhodes was sentenced within the 33-41 month range (37 months), and he did not receive any upward departure. Under the terms of the plea agreement he signed, Rhodes reserved the right to appeal only one aspect of the restitution order—the amount owed, if ordered over a given amount of $9,198.00. Thus, he waived his right to make any other arguments—including those concerning the identity of the party to whom he was ordered to make restitution and the lack of a payment schedule—when he signed the plea agreement.

As we stated in *United States v. Behrman*, 235 F.3d 1049, 1052 (7th Cir. 2000), waivers of appeal will be enforced "only to the extent of the agreement." The plea agreement that Rhodes signed reflected *a specific consideration of the restitution issue—i.e.*, the explicit exception to the appeal waiver over the *amount* of the restitution. Thus, we refuse to hold that the matter of restitution in this case was not specifically considered and treated in the negotiation and formulation of the plea agreement.

## B.  Calculation of the Loss Amount

Unlike waiver, which is "accomplished by intent," forfeiture "comes about through neglect." *Staples*, 202 F.3d at 995. Forfeiture permits plain error review. *Id.*; *see also* Fed.

R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.").

Rhodes contends on appeal that Magna over-compensated the victims of his fraud, and thus the court committed error when determining the amount of restitution. Rhodes' complaint essentially is that Magna was not patient enough, and that it should have waited until interest rates had changed before liquidating the riskier investments Rhodes had purchased for Magna's customers without their consent. As Rhodes failed to raise this objection in the trial court, he has forfeited the issue and we will therefore apply plain error review.

This Court has held that under the Mandatory Victims Restitution Act of 1996, 18 U.S.C. § 3663, there must be a "causal relation between the defendant's conduct and the loss that the Act requires him to restore." *United States v. Martin*, 195 F.3d 961, 968 (7th Cir. 1999). While for *sentencing* purposes "loss" is defined as the greater of *either* the "actual" or the "intended" amount lost due to the fraud, *see* U.S.S.G. §2B1.1, cmt. n.2 (2002), for *restitution* purposes the statute implicitly requires that the restitution award be based on the amount of loss *actually caused* by the defendant's offense. *See United States v. Brierton*, 165 F.3d 1133, 1139 (7th Cir. 1999).

The district judge after review found that the investors Rhodes defrauded "suffered an actual loss of $1,104,557.39 because that is the amount of money Magna Investments had to dole out in order to make its customers whole as a result of Rhodes' fraud." While it is not clear to us that the district court properly distinguished between "loss" for purposes of sentencing and "loss" for purposes of making restitution, *see United States v. Rhodes*, 201 F. Supp. 2d 906, 912 (C.D. Ill. 2002), we hold that it is ultimately immaterial for the purposes of this appeal.

The district court found that Rhodes' actions caused the losses actually suffered by the victims of his fraudulent scheme, *see id.*, and in the absence of any documented proof of miscalculation in the amount ordered, we refuse to set aside the amount of the restitution.

## C. Consequential Damages

Rhodes' last argument against the district court's restitution order is that he should not be required to reimburse Magna for "consequential damages."[1] Rhodes claims that "in order to avert possible suit by its customers," Magna immediately liquidated the unauthorized investments Rhodes had made, thereby incurring losses caused by a dip in the values of those investments and the fact that at least some of the investments were sold before their maturation date.

A district court's imposition of an order of restitution is reviewed for an abuse of discretion. *United States v. McIntosh*, 198 F.3d 995, 1003 (7th Cir. 2000). Here, we refuse to hold that the district judge abused his discretion in determining the extent of the damages caused by Rhodes' fraudulent actions. The court pointed to the fact that "the victims came to Rhodes and asked him to place their money in a short-term, relatively risk free investment, and he gave them a long-term, higher-risk investment in order to receive a greater profit for himself." Referencing the commentary in the Sentencing Guidelines on product substitution cases, the district judge did not abuse his discretion in stating that "Rhodes, rather than the victims, should bear the risk of forces beyond his

---

[1] "Consequential damages" are those damages that do not flow directly from a party's action, but only from some of the consequences or results of such action.

control. . . . [T]o the extent that the interest rates have come into play in calculating the amount of loss, they have done so due to Rhodes' own conduct. . . . Magna Investments should be lauded, not punished, for stepping up to the plate and making its customers whole." 201 F. Supp. 2d at 913.

### III.  CONCLUSION

We are convinced that the district court did not err in concluding that Rhodes' actions caused the losses suffered by the victims of his fraudulent schemes. We also hold that the court, in the absence of any documented proof to the contrary, properly determined the amount of loss in the order of restitution imposed upon Rhodes. As we believe Rhodes has waived his other arguments made on this appeal, we AFFIRM the district court's imposition of the order of restitution.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*