**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 12-4518**
_____

UNITED STATES OF AMERICA,

                    Plaintiff – Appellee,

          v.

HOWARD R. SHMUCKLER,

                    Defendant - Appellant.


_____

**No. 13-4003**
_____

UNITED STATES OF AMERICA,

                    Plaintiff – Appellee,

          v.

HOWARD R. SHMUCKLER,

                    Defendant - Appellant.


_____

Appeals from the United States District Court for the Eastern
District of Virginia, at Alexandria.   Leonie  M.  Brinkema,
District Judge. (1:11-cr-00344-LMB-1)

_____

Submitted:  June 12, 2013            Decided:  July 18, 2013

_____

Before SHEDD, DAVIS, and FLOYD, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

———————

Michael S. Nachmanoff, Federal Public Defender, Rachel S. Martin, Assistant Federal Public Defender, Caroline S. Platt, Appellate Attorney, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Neil H. MacBride, United States Attorney, Timothy D. Belevetz, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

From June 2008 to September 2009, Appellant Howard
Shmuckler owned and operated a business called The Shmuckler
Group, LLC (TSG).  Clients paid TSG substantial fees for home
loan-related services such as forestalling foreclosures,
modifying mortgages, and extending payment terms.  Shmuckler and
his employees led prospective clients to believe that he was an
attorney licensed in Virginia and that his business had a 97%
success rate.  In reality, Shmuckler had never been a member of
the Virginia bar, and TSG's actual success rate was
approximately 4.5%.  TSG's employees instructed clients to cease
making their mortgage payments and stop communicating with their
lenders.  During the course of its operation, TSG took in
approximately $2.8 million from 865 clients.

A grand jury returned an indictment charging Shmuckler with
seven counts of wire fraud.  After the district court dismissed
Count Three, Shmuckler pleaded guilty to the remaining six
counts.  Next, a probation officer prepared a presentence
investigation report (PSR), which calculated Shmuckler's offense
level as 35 and criminal history category as III, leading to a
recommended sentence of 210 to 262 months.  The probation
officer based this determination in part on an eighteen-level
increase for a loss of more than $2.5 million but no more than

3

$7 million and a two-level increase for an offense that involved sophisticated means.

At the sentencing hearing, Shmuckler objected to the proposed two-level increase for sophisticated means. The parties also disagreed regarding the loss amount. The district court agreed with the government and imposed a two-level enhancement for sophisticated means, explaining, "This was not a simple fraud scheme. It was complex. It involved among other things document manipulation." However, the district court decided to assume for the sake of argument that Shmuckler's loss calculation was correct, leading it to impose a fourteen-level enhancement for the amount of loss rather than the PSR's proposed eighteen-level enhancement. The court applied the other enhancements that the PSR recommended, leading to a recommended sentencing range of 135 to 168 months under the Sentencing Guidelines. The court ultimately imposed a sentence of ninety months to run consecutively with Shmuckler's undischarged term of imprisonment.

On August 16, 2012, the district court held a hearing regarding restitution. The government submitted a list reflecting all of the TSG clients whose mortgages TSG had failed to modify and the amounts they paid TSG, which it developed by interviewing TSG clients and bank representatives. This list suggested a restitution amount of $1,848,279. Shmuckler

4

contended that the restitution amount could not exceed the amount of loss the district court used for sentencing purposes, meaning the restitution amount could not exceed $1 million. The district court found the government's argument more persuasive and ordered restitution in the amount of $1,848,279 on December 17, 2012.

## II.

First, Shmuckler argues that the district court erred in applying a two-level enhancement under U.S.S.G. § 2B1.1(b)(10)(C) because Shmuckler's fraud did not utilize "sophisticated means." In evaluating the district court's application of sentencing enhancements, "this Court review[s] the district court's legal conclusions de novo and its factual findings for clear error." United States v. Horton, 693 F.3d 463, 474 (4th Cir. 2012) (alteration in original) (quoting United States v. Layton, 564 F.3d 330, 334 (4th Cir. 2009)) (internal quotation marks omitted). We therefore review the district court's finding regarding sophisticated means for clear error, see United States v. Noel, 502 Fed. App'x 284, 290 (4th Cir. 2012), and will reverse the district court's finding only if "left with the definite and firm conviction that a mistake has been committed," United States v. Harvey, 532 F.3d 326, 337

5

(4th Cir. 2008) (quoting In re Mosko, 515 F.3d 319, 324 (4th Cir. 2008)) (internal quotation marks omitted).

TSG's behavior resembles the scheme at play in United States v. Noel, and we find that case persuasive. In Noel, this Court determined that the district court did not err in imposing a sophisticated means enhancement when the defendant attracted clients by telling them that he would safely invest their money but then used the funds to start his own business. 502 Fed. App'x at 290. The Court emphasized the defendant's lies to financial institutions and explained that his "three-year period of extensive, intentional concealment is the kind of scheme anticipated by the" sophisticated means enhancement. Id.; see also United States v. Kontny, 238 F.3d 815, 820 (7th Cir. 2001) ("The more sophisticated the efforts that an offender employs to conceal his offense, the less likely he is to be detected, and so he should be given a heavier sentence to maintain the same expected punishment, and hence the same deterrence, that confronts the average offender."). Shmuckler similarly attracted clients with lies, including falsehoods regarding the success rate of his business, his status as an attorney, and the extent of TSG's operations. He also took significant steps to conceal his fraud by telling clients not to communicate with their lenders. In light of these aspects of Shmuckler's scheme,

the district court did not clearly err in finding that he utilized sophisticated means.

Second, Shmuckler alleges that his sentence is procedurally unreasonable because the district court did not sufficiently explain its decision to run Shmuckler's sentence consecutively to his undischarged term of imprisonment. "A district court's decision to impose a sentence that runs concurrently with, partially concurrently with, or consecutively to a prior undischarged term of imprisonment is constrained only by its consideration of the factors mentioned in the commentary to [U.S.S.G.] § 5G1.3(c)." United States v. Mosley, 200 F.3d 218, 223 (4th Cir. 1999) (per curiam). These factors include the following:

> (i) The factors set forth in 18 U.S.C. [§] 3584 (referencing 18 U.S.C. [§] 3553(a));
>
> (ii) The type (e.g., determinate, indeterminate/parolable) and length of the prior undischarged sentence;
>
> (iii) The time served on the undischarged sentence and the time likely to be served before release;
>
> (iv) The fact that the prior undischarged sentence may have been imposed in state court rather than federal court, or at a different time before the same or different federal court; and
>
> (v) Any other circumstance relevant to the determination of an appropriate sentence for the instant offense.

U.S.S.G. § 5G1.3 cmt. n.3(A).

7

The record in this case demonstrates that the district court considered the factors that the commentary to U.S.S.G. § 5G1.3(c) identifies. First, the court considered the § 3553(a) factors. Specifically, the court considered Shmuckler's "age, [his] definitely well-documented health situation, and the fact that [he had] received a significant sentence from the District of Columbia." The court also explained, "I want to make sure that this sentence reflects the seriousness of this conduct and the need, as I said, to send the word out to other people in the financial and real estate industry that you can't prey on those [vulnerable] communities within our area and take advantage of them." The court also evaluated "the kinds of sentence and the sentencing range." 18 U.S.C. § 3553(a)(4). The court's comments further indicate that it considered the length of Shmuckler's undischarged term of imprisonment as required by the commentary to U.S.S.G. § 5G1.3. For these reasons, the district court did not abuse its discretion by imposing a consecutive sentence in this case.

Third, Shmuckler argues that the district court erred in ordering restitution in an amount greater than the amount of actual loss it used for sentencing purposes. In support of this argument, Shmuckler compares the restitution requirements of the Mandatory Victims Restitution Act (MVRA)—which requires district courts to order restitution in wire fraud cases, 18 U.S.C.

§ 3663A(c)(1)(A)(ii)—with the restitution calculation parameters set forth in U.S.S.G. § 2B1.1. The MVRA "implicitly requires that the restitution award be based on the amount of loss actually caused by the defendant's offense." United States v. Dokich, 614 F.3d 314, 319 (7th Cir. 2010) (quoting United States v. Rhodes, 330 F.3d 949, 953 (7th Cir. 2003)) (internal quotation marks omitted). By contrast, the Guidelines direct sentencing courts to determine the amount of loss by looking to the "greater of actual loss or intended loss." U.S.S.G. § 2B1.1 cmt. n.3(A). Shmuckler contends that, in light of these rules, "it is legally and logically 'impossible' for restitution to exceed the loss found for purposes of the sentencing guidelines" as the restitution amount did in this case. This Court reviews restitution orders for abuse of discretion. See Harvey, 532 F.3d at 339.

Each party contends that the Seventh Circuit's decision in United States v. Dokich supports its position, and we find the case instructive. In Dokich, the district court had used a lower figure for sentencing purposes than it ordered in restitution, causing the circuit court to speculate that "[p]erhaps the district court, by deliberately basing its guidelines calculation on a lower amount of loss, intended in this way to give [the defendant] a break." 614 F.3d at 320. The court held that the district court did not abuse its

9

discretion because it had made a specific finding of actual loss for restitution purposes. Id. In the case at hand, the district court explicitly stated that it was "giv[ing] the defendant the benefit of the doubt" by using the lower loss amount for sentencing purposes. However, during the hearing regarding restitution, the court made a more accurate finding of actual loss. The district court therefore did not abuse its discretion in using a greater loss amount for restitution than it did for sentencing purposes.[*]

III.

For the foregoing reasons, we affirm the decision of the district court.

AFFIRMED

---

[*] Shmuckler further contends that the restitution order violates the Sixth Amendment because the judge, not the jury, found the facts supporting its entry. However, he acknowledges that this Court rejected the same theory in United States v. Day, 700 F.3d 713, 732 (4th Cir. 2012), and we agree that the argument therefore lacks merit.